Our last oral argument for the day is U.S. v. Cantu, 19-6043. Good morning, your honors. May it please the court, Jake Rochebeau from the Federal Public Defender's Office on behalf of the appellant Francisco Cantu. It is undisputed that Mr. Cantu's statute of conviction is not categorically a serious drug offense under the ACCA because it applies to substances that are not federally controlled, namely salvia and TFMPP. The only issues before this court are divisibility and the realistic probability test. First, the statute is divisible only down to the three categories of drugs that carry different punishments. And second, the realistic probability test does not apply because the state statute expressly includes means that are overbrought. The elements versus means divisibility analysis here is easy because a state court case definitively answers the question. In Watkins v. State, the OCCA, the Oklahoma Court of Criminal Appeals, held that a defendant cannot be convicted of two counts of possession with intent to distribute two different controlled substances in the same package. That's because possession with intent to distribute is a single offense under Section 2-401. The elements of each count were the same, the court said. So if the elements of possession with intent to distribute cocaine and possession with intent to distribute a different controlled substance, their PCP, are the same, that clearly indicates that cocaine and PCP constitute one element. That is, they are means of satisfying a single element, not that every controlled substance is itself a separate element as the government contends. Although, that's as a matter of state law. Federally, that precedent was wrong, wasn't it? Because their penalties are different for the two drugs. So we would now say that they couldn't, they had to be different offenses. But as a matter of state law, you're saying that they're means, not elements. Right, and so, right, as a matter of state law, Oklahoma considers the drug to be a means of satisfying an element. You agree that under federal law, the federal court would not affirm a conviction without being clear that the jury had unanimously agreed on which of the drugs was involved. Is that correct? That is correct. And that's, so Watkins was pre-Apprendi and Apprendi's prodigy, which says that any fact that is determinative of the statutory sentencing range is an element. That's a bit confusing here because the precedent you're relying on is wrong under federal law. Well, it's wrong only to the extent that the two drugs, the two separate drugs possessed are punished differently. So there's, so Watkins holding that two drugs that are punished the same would constitute a single element, that still holds true. So Apprendi, right, so now based on Apprendi, we know that the Section 2-401 doesn't constitute a single offense. It constitutes three, well, so we actually know from later cases, later Oklahoma State cases how they apply Apprendi. So in Chadwell, the court, which was post-Apprendi, the OCCA said that lewd acts with a child constitutes a single offense, notwithstanding that there are two different punishments. That is where there's one punishment where there's a minor under 16 and an enhancement where the minor victim is under 12. So the way that Oklahoma courts reconcile their state case law with Apprendi is to say that, OK, it still constitutes a single offense, but we recognize that under Apprendi there are now multiple sentencing elements. So Apprendi, as opposed, so Watkins can be modified by Apprendi to say that, OK, Section 2-401 is still a single offense. However, where the drugs do carry different punishments, then those are separate elements. Here, that's not a concern because the structure of the statute creates three tiers of punishment. The first, based on the type of controlled substance involved. So the first category is Schedule 1 and 2 narcotics and variations of GHB. The second one is other Schedule 1 through 4 drugs. And then the third category is Schedule 5 drugs. Mr. Cantu's offense of conviction is that middle tier, the other Schedule 1 through 4 drugs. That's what he was convicted of. And that is the section that is categorically overbroad because it includes non-federally controlled substances of salvia and TFMPP. Counsel, on that point, why doesn't the Oklahoma Uniform Jury Instructions support divisibility down to the type of drug, given that the instructions contemplate the specific drug being part of the instruction? Right. So the Model Jury Instructions, which you'll consult them only if the state case and structure of the statute doesn't definitively answer the question, which I submit that it does here. I mean, you're not allowed to look at the jury instructions otherwise? What support do you have for that? I believe Mathis says, you know, you first look to see whether a state case definitively answers the question. If not, the state statute, the structure of the state statute might answer the question because of Apprendi. And if they carry different punishments, then they're different elements. And then only- So you read Apprendi as if the answer's clear at either that first or second step, you stop. Correct? I think so, because the Model Jury Instructions don't have the force of law. They're developed by committees, and they're basically suggestions that the committee believes is consistent with state law. Well, OK. I understand your point. But if we were to reach the jury instruction, doesn't that support divisibility down to the type of drug? Not very much. Any support for that would be pretty minimal. As this court found in United States v. Degree, there the language seemed to even more strongly support the idea that there were multiple elements. Here the Model Jury Instruction just says that the third element is the controlled dangerous substance of, and then brackets, insert the name of the substance. In Degree, the instruction said, select the fourth element that is supported by the evidence. And in Degree, this court said that that's not enough to provide the requisite certainty that has to be shown in order to find that it definitely is divisible. That was because the notes on use didn't say that you couldn't insert multiple elements. Multiple alternatives that were supported by the evidence. And they also just said that there was no indication that elements necessarily meant element, that like these were alternative elements. They could certainly be. I understand your argument. Would the same point extend to if we were to look at the charging document, under your view of divisibility, wouldn't the charging document have to say something like, Mr. Cantu was convicted of knowingly distributing an Oklahoma controlled substance that fits punishment category 2? Isn't that the, that's as far as divisibility goes? Why wouldn't the charging document just say that? I mean, it certainly could say that, and that would be sufficient. But the fact that it's... But here it says methamphetamine. Now, doesn't that suggest that that's the element, that the drug is the element? It doesn't because indictments and informations and complaints, you know, often specify a particular means. They don't always generalize to just the broader element. So particularly here where you could specify the means and then just look up which category punishment it falls into, look up that it is, that, you know, it specifies methamphetamine. We know that's a schedule 2 non-narcotic controlled substance. We can just look that up in the statute. So for example, if, you know, if a, you know, if an indictment said possession of, you know, rather than saying like possession of an unlawful weapon, it could specify, even if it's just means, possession of an unlawful pistol. And we wouldn't necessarily assume from that that pistol is an element as opposed to just a means. Where the charging documents are more helpful is the situation where they list multiple alternatives, because that indicates if there's multiple alternatives listed, you know, it would be a duplicitous indictment if you included multiple elements in a single count. So we tend to know by looking at the charging documents that if there's multiple alternatives listed, then that suggests there's means. But that's not to say if there's only one that it suggests it's an element. That could just be the known means by which the defendant satisfied that element. So I think in this case, just peeking at the Shepard documents and then also looking at the model jury instructions, those might, you know, imply an element, but it certainly doesn't overcome a state law case saying that it creates, that the statute is a single offense with the same set of elements. And the structure of the statute, which Apprendi suggests, creates three categories of punishment. The government also argues that the realistic probability test applies here. This court's decision in United States v. Titties clearly holds that, and in other cases, this court's consistently held the defendant need not cite a case, a state case where the statute was applied in overbroad means, where, or in an overbroad manner, where the statute expressly includes those overbroad means. So here, the statute expressly applies to Salvia and TF-MPP. No legal imagination is required to conclude that the statute implies to that conduct. And this approach is consistent with at least four other circuits, including the First Circuit, who in Swabie v. Yates, which this court relied on, United States v. Titties, found that case to be persuasive, applied this in the same context, or did not set the reasonalistic probability does not apply to, there it was Rhode Island's drug schedule, which was expressly overbroad because it included drugs that were not federally controlled. Counsel, I understand the point you just made, but do you have any evidence that any prosecutions ever have been brought in Oklahoma relative to the three non-federal controlled substances? I didn't find any cases that do. I believe I cited in the reply a bunch of newspaper articles saying how this was, that Salvia in particular was a public health concern because apparently it became a viral sensation for teenagers to smoke Salvia and post that on YouTube. And Oklahoma, I think, I want to say it was maybe 10 years ago, became one of the first states to control Salvia. So to the extent that it's totally unrealistic that Oklahoma would ever prosecute something like Salvia is just absurd. We know that it's a law that was recently put on the books and it's certainly something that the state is concerned with prosecuting. I need to ask you, we're on plain error review, correct? Well, it wasn't objected to below, so yes, it is plain error review. But as your Honor explained in United States v. Titties, plain error review for ACCA eligibility is not materially different from de novo review because you look at the first step of plain error review, which is error, and if there is an error, that means that there's an illegal sentence because in this case, Mr. Cantu was sentenced to at least 15 years, which is the statutory maximum of 10 years. So if there is error, as we say there is, then he is serving an illegal sentence, which triggers per se reversible error without undergoing plainness review. That opinion wasn't addressing whether it was clear that it was inconsistent with the Whether it's clear that this was not an appropriate statute to use for ACCA enhancement. That's my understanding that in United States v. Titties, they were considering whether a specific statute did qualify as an ACCA predicate or whether the fact that it applied to I think pointing a gun for purposes of whimsy or prank rendered it categorically overbroad. And as to the question of whether it was categorically overbroad, this Court did not undertake, expressly did not undertake plainness review at step two of plain error. I see that I'm out of time, so I'd ask that this Court Let me ask you, you're not pursuing anymore the argument that it's not divisible solicitation because of the solicitation provision? Your Honor, I'm not conceding the argument, but certainly. So there is one potentially minor point that I would make in response to the government on that. The government treats as dispositive the fact that there is a sentencing enhancement for solicitation. There is a distinction between the sentencing enhancement and the acts that are criminalized in that the sentencing enhancement, so the acts criminalized, it says, you know, shall be unlawful to, and I'm paraphrasing here, distribute a controlled substance or solicit a minor in the distribution of a controlled substance. And then it provides penalties for those acts. Then there is a separate penalty enhancement where an adult solicits the use of a minor. So in order for that penalty enhancement to apply, arguably the Oklahoma would have to specifically charge their adult status, which wasn't done here. And with that, we would ask this Court to remand for resentencing with instructions that the ACCA not apply. Thank you, Counsel. May it please the Court, Stephen Kreger on behalf of the United States. The District Court did not err, much less plainly err, when it concluded that Mr. Cantu was an armed career criminal and, at least implicitly if not explicitly, concluded that his two convictions for distribution of methamphetamine were serious drug offenses. The main dispute appears to be over what Watkins says and what Watkins means. And while it's true Watkins prior to Apprendi said that Section 2-401 defines one offense, what Watkins also said is that different punishment levels are provided for different drugs. It went on just a few sentences later to explain that punishment is based on the type of drug involved. What Apprendi said is that a fact that determines what a sentence is, is an alternative element, is an element of the offense, and this is what Mathis repeated. It very likely might be true that even today, a cocaine, even if a cocaine and PCP conviction were had post-Apprendi, they would merge, but that's because Oklahoma has a special provision, Title 21, Section 11, which was addressed in a case called Lewis v. State, where it says one act of possession can only be punished one time, even if it would be two completely separate acts. Additionally, Lewis specifically talks about Watkins, and it says in Watkins the defendant's possession of cocaine, not the defendant's possession, let me I guess fully say the quote, in Watkins the defendant's possession of cocaine determines the punishment. It doesn't say the defendant's possession of a Schedule II non-narcotic or the defendant's possession of a substance under 2-401B2, it specifically identified cocaine as that substance. And so Watkins, with the portion of the holding that was invalidated by Apprendi, you still are left with the statement that the specific drug provides the punishment. This is amplified post-Apprendi. How was it supposed to say possession of a schedule, whatever it is, determines the punishment, instead of saying cocaine? It could have. That's what you have required? Wouldn't that have been a rather strange way for a court to write that? Well, Your Honor, as far as Lewis, that's exactly what the court said when it defined the element for trafficking. It said a substance listed in subsection A, and a quantity in subsection C. That is how it defined the element for trafficking purposes. But in what Lewis was referring to Watkins, it said cocaine. And this is further amplified, as the court pointed out, by the uniform jury instructions, which specifically say for distribution, the state has to prove in the third element, quote, the controlled dangerous substance of name of substance. It doesn't have slashes with parentheses like the court had in Titties. It doesn't list schedule 1 or 2, narcotic, GHB or LSD, slash, schedule 1, 2, non-narcotic, or schedule 3, 4, slash, schedule 5, controlled substance. It says insert the name of the substance. And so what state law has clearly said time and time and time again is that the element of the offense is the controlled substance. How does the model jury instructions deal with, say, burglary, where there might be various types of structures that could be burgled? Does it, say, identify a structure that was entered? While I'm not 100% certain, I believe, I'm about 90% sure that for burglary in the second degree, it has slashes between the various locations. And you're saying when it has slashes, that means they're means? This court has said that at least significantly weighs towards them being means rather than elements of the offense. I believe in Titties it said that, in Hamilton it said that. Now in Hamilton it said that wasn't dispositive and concluded that state law was ambiguous. And then it went on to say that the use of a non-statutory term residence, because it could encompass both trailer residences as well as building residences, made it sufficiently unclear for Mathis purposes. But it ended up reaching, even with the slashes, the documents in Hamilton. But even if the court... In a categorical approach, are we obligated to look at the pattern jury instructions, or is that our alternative? This court has been up in the air about where the uniform jury instructions fit. I would submit that they probably fit in the context of decisions by state courts, because while they're drafted by a committee, they're approved of in a published order by the Oklahoma Court of Criminal Appeals. And they're required under state statute to be given unless they incorrectly state the law. So while they're not necessarily 100% definitive, they at least give a very strong indication of what the court of criminal, or what the state... Do you think that's diminished when we have to look at, when you say we can't look at these instructions? We have to distinguish between slashes and some other reference to this drug or category of drugs? Seems pretty granular. Your Honor, I would agree with that. And I personally, I've been a proponent of slashes do not necessarily mean that something are means, but this court has concluded that they do counsel in favor of saying that they're means. My point here is that based on that precedent, the Court of Criminal Appeals and the Uniform Jury Instruction Committee has shown that they can use slashes even with long phrases if they want to. But here, instead of using slashes with long phrases, which they could have done, they said specifically insert the name of the substance. Is our standard review the same as if it weren't being reviewed on plain error? No, Your Honor. This court's review would be for plain error and the defendant would be obligated or is obligated. What's the difference on this issue? How, in light of Titties, should we analyze this differently? Because the issue wasn't preserved in district court. Well, Your Honor, I can tell you, for no other reason than personal experience, that Titties, the government conceded that there wasn't a visibility. And this court looked, I believe, at Hood, which had said that Title 21, Section 1289.16 was overly broad. And so with that concession that it was divisible or that it was not divisible in addition to this court's precedent in Hood, that provided the plain error. The government had argued in that case that there was a waiver. And the court concluded there was not a waiver because the arguments that were made in the district court in Titties were based on then existing law. And this court applies now existing or the law in existence of the time of the appeal to determine plainness. And so it said, essentially, it said there was no waiver in light of the law. So in light of that, how should we examine divisibility? Well, Your Honor, from the way we would if the issue had been preserved. I assume that's what you're saying. So Titties did not address how we resolve divisibility under plain error review. Is that the gist of what you were saying? Correct. So given that, how do we determine divisibility under plain error review? Well, first of all, the court can and I would submit should address whether or not there was to the plainness aspect. This court has repeatedly, both pre and post Mathis, said that Section 2-401 offenses can qualify. In cases like Timothy Johnson, Villanueva, and McMahon, this court addressed Section 2-401. But I think perhaps the most important case was decided December 26th of 2018. It was an unpublished decision addressing a motion to withdraw under Anders, where this said that it could conceive of no reason why a conviction under 2-401 would not qualify as a serious drug offense for purposes of the ACCA. And if this court, as a three-judge panel, is going to say, exercising its discretion and its exhaustive review under Anders, that 2-401 does qualify as a serious drug offense and that there was not an argument that could be conceived. I would submit that this court should not. Do you know if the panel in that case was alerted to the fact that there were these three additional drugs in there? It does not say. I would not be surprised if it was not alerted to that fact. But I would submit in this case. It's a difference. And maybe it was the level of briefing that caused the panel not to publish the opinion. Well, Your Honor, the reason for plain error is to give the district court the opportunity to correct an error. Had the district court presented this? Or had the district court been presented this issue? Perhaps it would have given, at least would have given an analysis and its views on this issue. I'm not willing to concede that it would have come out. I think you misstated the purpose of plain error review. The purpose of requiring objections is to give the district court an opportunity to counsel to address it. But plain error can be based on a Supreme Court decision that came out after the, well, while the case was up on appeal. So the fact that there it's irrelevant that the issue wasn't presented. And I would submit if there was a change in the law, and this would probably place us far more squarely into where perhaps cities was. Because there was a change in the law there. There was a change in, or Mathis came out between when the appeal started and when briefing occurred. One, since your time is running out, I don't want to belabor that issue.  Before you do that, Watkins was a double jeopardy case? Yes, your honor. And you make much to do about that. Why does that matter? You say that makes it distinguishable. I, no, actually, your honor, I'm relying on Watkins. I'm relying on Watkins saying that where the court of criminal appeals explicitly said that punishment is determined by the type of drug, now the statement with regard to it constitutes one offense clearly cannot stand after Apprendi. Because we had cocaine and we had PCP. Those two clearly could not be one offense, at least for purposes of federal double jeopardy. And so, but Apprendi did not disturb the court of criminal appeals statements with regard to punishment is determined by the type of drugs. But beyond, even beyond Watkins, beyond Lewis, beyond the uniform jury instructions, there's also something that was not touched on today, the Oklahoma Methamphetamine Registry Act, which includes criminal provisions and which singles out a specific type of drug, methamphetamine, for an element of a future offense if a person possesses pseudoephedrine. Under something along the lines of Taylor, that would have to be an element of the offense. It would have to be an element because it is not, registry under the Methamphetamine Registry Act is not determined by, it's not determined by the jury, it's not determined by the court, it's determined essentially as a ministerial matter by the clerk of court. And the only way the clerk of court would be aware of that is by the elements of the offense. But even if this court were to conclude that in light of Watkins and Lewis and the uniform jury instructions and the Methamphetamine Registry Act, that state law is not clear. This leaves the record on appeal, which Mathis specifically said, where the state law is not clear, courts should look at the records. And here, as I believe Judge Hartz pointed out, the records specifically say methamphetamine. In addition, counsel for Mr. Cantu has suggested that the judgment does not say that. But the judgment is not one of the four records listed in Mathis and listed in the scams. Those records were the information, the plea colloquy, the plea agreement, and the jury instructions. It was not the judgment because judgments typically do not include the elements of the offense. And finally, to circle back to the realistic probability test, while we would continue to press that, I understand that Titties might foreclose this panel from revisiting that. We largely did that as a preservation issue. We think that there is a good reason to adopt that in this case, given categorically most states would not qualify without that. And that's something the Supreme Court has been very leery of saying. I see that I'm over my time. So unless there are any further questions, I'd ask that you affirm. Thank you. Had your time expired? I have a question for you. Is there something unique about methamphetamine that makes it an element because of the controlled substances and make it, in particular, an element, and it specifically has to be charged expressly? No, Your Honor. I mean, the government concedes in their brief that registration is not part of the formal punishment. That makes it more like a collateral consequence. If it's not part of the actual punishment, then it's not something that a prendi requires jury unanimity on. So Oklahoma can decide how it wants to decide that methamphetamine was involved. Thank you. Thank you very much, counsel. Case is submitted. Counselor excused. And court is adjourned.